IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01936-CNS-KAS

JOSHUA OMAR GARCIA,

      Plaintiff,

v.

WASHINGTON COUNTY JUSTICE CENTER,
WOLEVER, Sgt.,
G. OHALLORAN, Lt.,
PALLESEN,
SHAVER, Sgt.,
STEWART, Capt.,
GREGG, and
GOBLE, Sgt.,

      Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Defendants' **Motion to Dismiss** [#41][1] (the "Motion"). Plaintiff, who proceeds as a pro se litigant,[2] did not file a response in the time ordinarily permitted. *See* D.C.COLO.LCivR 7.1(d) (allowing twenty-one days to file a response to a motion). He also did not file a substantive response despite the Court sua sponte giving him an additional opportunity to address the Motion [#41]. *Minute Order*

---

[1] "[#41]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

[2] The Court must construe liberally the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). In doing so, the Court should neither be the pro se litigant's advocate nor "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

[#50]; *Letter/Response* [#53]. The Motion [#41] has been referred to the undersigned for

a Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and

D.C.COLO.LCivR 72.1(c)(3). *See* [#43]. The Court has reviewed the briefs, the entire

case file, and the applicable law. For the reasons stated below, the Court **RECOMMENDS**

that the Motion [#41] be **GRANTED in part and DENIED in part**.

## I. Background

Although Plaintiff is currently incarcerated by the Colorado Department of

Corrections, at all times relevant to this litigation he was a pretrial detainee at the

Washington County Justice Center. *Am. Compl.* [#19] at 4, 17.[3]

On March 31, 2023, Plaintiff was booked into the Washington County Justice

Center. *Id.* at 17. While being booked, he was required to give the officers all his

confidential legal documents. *Id.* The documents were photocopied, with Plaintiff

receiving the copies and the originals placed "in a non-sealed property bag" that was kept

"up front." *Id.* Plaintiff told the officers that he did not want his documents copied, but they

said that he would not otherwise be able to have them, so he agreed "under duress." *Id.*

On May 29, 2023, Defendant Pallesen, one of the staff members, refused to let

Plaintiff have his "legal confidential mail" without photocopying them and keeping the

originals in the "non-sealed property bag up front." *Id.* Plaintiff told Defendant Pallesen

that this was "against the law," but that he would comply "under duress." *Id.* He was told

that this procedure was "their Policy." *Id.* The same thing happened on June 1 and/or 2,

---

[3] For the purposes of resolving the Motion [#41], the Court accepts as true all well-pleaded, as
opposed to conclusory, allegations made in Plaintiff's Amended Complaint [#19]. *See Shero v.
City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550
U.S. 544, 570 (2007)).

2023, but with different staff, i.e., Defendant Wolever and former defendant Genereux.[4]
*Id.* On June 20, 2023, Officer Genereux brought Plaintiff his "legal confidential mail with
3 in. by 4 in. of one of the corners ripped or cut open." *Id.* at 18.

Meanwhile, on June 1, 2023, Plaintiff was "let go from the kitchen," after which he
"filed a grievance on the kitchen staff." *Id.* at 20. On June 13, 2023, Officer Genereux told
Plaintiff that, based on policy, Plaintiff had to move to a new pod because he had been
"let go from the inmate workers program." *Id.* Plaintiff states that he had read the relevant
policies in the inmate handbook and told Officer Genereux that there was no such policy.
*Id.* Officer Genereux still told him that he had to move, but Plaintiff refused to do so until
he could talk to Defendant Wolever, a sergeant. *Id.* When Defendant Wolever came,
Plaintiff tried to talk to him, but he told Plaintiff to come to the recreation area to talk, which
Plaintiff did. *Id.* Plaintiff again tried to talk to Defendant Wolever, but Officer Genereux
kept cutting him off. *Id.* Plaintiff asked him to stop interrupting, but he would not. *Id.*
Plaintiff then asked Officer Genereux to leave, at which point Officer Genereux told
Defendant Wolever to handcuff Plaintiff. *Id.* Defendant Wolever grabbed Plaintiff's wrist,
and Plaintiff tried "to turn to him to try to plead him into talking" with Plaintiff, because
Plaintiff believed that he was still being reasonable. *Id.* Both officers then grabbed Plaintiff
"and started to push [him] around." *Id.* Plaintiff states that he "froze up not knowing what
to do." *Id.* The officers then "started to knee" him, causing him pain, and then started
pushing him around again. *Id.* at 20-21. Eventually they threw him on his face, "which
hurt," and then handcuffed him behind his back. *Id.* at 21.

---

[4] Plaintiff's claims against Officer Genereux were dismissed from this lawsuit on February 13,
2025. *Order* [#55].

Defendant Wolever and Officer Genereux picked Plaintiff up "by the handcuffs" and carried him "by the handcuffs," which caused Plaintiff "sever[e] pain" in his wrists, arms, and back because his toes were barely able to touch the ground most of the time. *Id.* Plaintiff states that the officers "ran [his] head into door jambs," which was painful and caused him to "see stars." *Id.* Then, they threw him on his face into a cell which "busted [his] lip," which was again painful. *Id.* Plaintiff states that the officers then started to take the handcuffs off him, so he tried to sit up, but Officer Genereux jumped on his back and put his arm around Plaintiff's neck. *Id.* Defendant Wolever then started to taze Plaintiff "a number of times." *Id.* Because it hurt so much, Plaintiff grabbed Defendant Wolever's wrist and held it away from him. *Id.* He told the officers to get out of the cell, and they left. *Id.* They also refused to let Plaintiff go to medical, so he told them that he had to go to the hospital. *Id.*

Several weeks later, on July 8, 2023, Defendant Shaver, another sergeant, forced Plaintiff to choose between using his "limited out-of-cell time for shower, cleaning and phone or access to the law library." *Id.* at 25. Because Plaintiff was in segregation, he was only allowed out for one hour per day. *Id.* The next day, July 9, 2023, Officer Genereux forced Plaintiff to make the same choice. *Id.*

On July 13, 2023, Defendant Shaver asked Plaintiff if he wanted staff to copy his legal mail so that Plaintiff could be given the copies. *Id.* at 27. Plaintiff told him that he did not want his legal mail copied and was told by Defendant Shaver that this was the policy. *Id.* Plaintiff said that copying the legal mail was against the law, but Defendant Shaver refused to give Plaintiff the originals of his legal mail. *Id.* Plaintiff was told that the legal mail would be put "up front" with Plaintiff's property to which he does not have access. *Id.*

4

On July 14, 2023, Plaintiff had a similar conversation with Defendant Gregg over the same issue. *Id.*

Finally, Plaintiff broadly states that the "living conditions are really bad here because there are a lot of conditions not being met and conditions being violated." *Id.* at 29. Plaintiff asserts that the living conditions "are playing hell" on his physical and mental health, and that the combination of all issues at the facility give him "a living condition claim." *Id.* at 30.

Based on these allegations, Plaintiff asserts five claims: (1) Claim One: violation of the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments, as well as violation of certain federal regulations (specifically, 28 C.F.R. §§ 540.18 and 540.19), based on interference with legal mail and interference with access to the courts, asserted against Defendants Wolever, OHalloran,[5] Pallesen, and Washington County Justice Center, *id.* at 2, 5-6, 17-19; (2) Claim Two: violation of the Eighth and Fourteenth Amendments based on excessive force and medical care, asserted against Defendants Wolever, Shaver, Stewart, and OHalloran, *id.* at 2, 7-9, 20-24; (3) Claim Three: violation of the First and Eighth Amendments based on limited out-of-cell time, asserted against Defendant Shaver, *id.* at 2, 10, 25-26; (4) Claim Four: violation of the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments based on interference with legal mail, asserted against Defendants Shaver, Gregg, and the Washington County Justice Center,[6] *id.* at 2, 11, 27-

---

[5] The Court uses the version of this defendant's name utilized by Defendants throughout their Motion [#41].

[6] The Court notes a discrepancy here. On page 2 of his Amended Complaint [#19], Plaintiff states that Claim Four is asserted against only Defendants Shaver and Gregg, while on page 11, Plaintiff states that this claim is asserted against those two as well as the Washington County Justice Center. For purposes of resolving this Motion [#41], the Court assumes that Claim Four is asserted against all three of these defendants.

28; and (5) Claim Five: construed by the Court as a claim for violation of the Fourteenth Amendment based on conditions of confinement, asserted against Defendants Washington County Justice Center, OHalloran, Shaver, Wolever, and Goble,[7] *id.* at 3, 13-15, 29-30. As a result of these purported violations, Plaintiff seeks damages and various forms of injunctive relief. *Id.* at 33-37. In the present Motion [#41], Defendants seek dismissal of all claims pursuant to Fed. R. Civ. P. 12(b)(6). In addition, the Court sua sponte addresses subject matter jurisdiction issues under Fed. R. Civ. P. 12(h)(3).

## II. Standard of Review

### A.    Fed. R. Civ. P. 12(h)(3)

If the Court determines, at any time, that it lacks subject-matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3). This is because a court which lacks jurisdiction cannot render judgment. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). The party invoking the federal court's jurisdiction bears the burden of establishing subject-matter jurisdiction. *Id.*

Because federal courts are tribunals of limited jurisdiction, the Court must establish a statutory basis to exercise jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). The Court may only exercise jurisdiction "in the presence rather than the absence of statutory authority." *Castaneda v. I.N.S.*, 23 F.3d 1576, 1580 (10th Cir. 1994) (quoting *Wyeth Lab'ys v. U.S. Dist. Ct.*, 851 F.2d 321, 324 (10th Cir. 1988)). "The party invoking federal jurisdiction has the burden to establish that it is proper, and there is a presumption

---

[7] Claim Five is the only claim asserted against Defendant Goble. *Am. Compl.* [#19] at 3, 15. Because of some disclarity in the Amended Complaint [#19], Defendant Goble was not formally added as a Defendant in this lawsuit at the time the Amended Complaint [#19] was filed. However, that omission has been corrected and the United States Marshal has effected service on him, with an answer or other response to the operative complaint now due by July 15, 2025. *See Certificate of Service* [#56]; *Summons Returned Executed* [#57]; *Minute Order* [#62].

against its existence." *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1134 (10th Cir. 2014) (internal quotation marks omitted). The Court "has discretion to consider affidavits and other documents to resolve the jurisdictional question." *Graff v. Aberdeen Enters., II, Inc.*, 65 F.4th 500, 507 (10th Cir. 2023) (citing *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)).

**B.    Fed. R. Civ. P. 12(b)(6)**

Fed. R. Civ. P. 12(b)(6) permits dismissal of a claim where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). However, conclusory allegations are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Rather, "[a] complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When the complaint includes 'well-pleaded allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Carraway v. State Farm & Cas. Co.*, No. 22-1370, 2023 WL 5374393, at *4 (10th Cir. Aug. 22, 2023) (quoting *Iqbal*, 556 U.S. at 679).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do . . . .  [n]or does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "[D]ismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal,*

*Inc.*, 861 F.3d 1081, 1104-05 (10th Cir. 2017). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial[.]" *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

### III. Analysis

### A.    Fed. R. Civ. P. 12(h)(3)

The Court may sua sponte consider whether any of Plaintiff's claims are moot. *See McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996) ("Because mootness is a matter of jurisdiction, a court may raise the issue sua sponte."). When a prisoner sues prison officials at his institution, seeking declaratory and injunctive relief based on their conduct, and then is transferred to another facility, transfer may moot his claims. *Jordan v. Sosa*, 654 F.3d 1012, 1027 (10th Cir. 2011) (citing *Green v. Branson*, 108 F.3d 1296, 1299 (10th Cir. 1997)). Specifically, "[w]here the prisoner's claims for declaratory or injunctive relief relate solely to the conditions of confinement at the penal institution at which the prisoner is no longer incarcerated," courts cannot provide effective relief. *Id.*; *see also Green*, 108 F.3d at 1299-1300 (finding moot prisoner's claims for declaratory and injunctive relief against state officials because he was transferred to federal custody and later released). In other words, granting declaratory or injunctive relief against transferor prison officials would not alter their behavior towards plaintiff if he were no longer in their custody, rendering such claims nonjusticiable. *Green*, 108 F.3d at 1300. However, when a prisoner challenges "policies that apply in a generally uniform fashion throughout a prison system," courts generally will not find his claims moot following transfer to another prison within that system. *Jordan*, 654 F.3d at 1028. Instead, those claims typically proceed against "defendants who were actually situated to effectuate any

prospective relief that the courts may see fit to grant—viz., . . . the director of the prison system or the prison system itself." *Id.*

Here, Plaintiff has been transferred from the Washington County Justice Center, a county jail, to the Arkansas Valley Correctional Facility, a state prison run by the Colorado Department of Corrections. *See Am. Compl.* [#19] at 4; *Notices of Change of Address* [#24, #30, #34]. Because Plaintiff's requests for declaratory or injunctive relief all go to conditions at the county jail (which is not part of the same prison system as his current state prison), his claims, to the limited extent he seeks such relief, are now moot because he is no longer in the custody of the Washington County Justice Center. *See Green*, 108 F.3d at 1300; *Am. Compl.* [#19] at 33-37 (discussing Plaintiff's requested injunctive and declaratory relief). In addition, this means that Plaintiff's claims against the individual defendants are moot to the extent asserted against them in their official capacities. *See Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief.").

Accordingly, the Court **recommends** that Plaintiff's claims against Defendants Wolever, OHalloran, Pallesen, Shaver, Stewart, and the Washington County Justice Center, to the extent Plaintiff seeks injunctive and declaratory relief, and Plaintiff's claims against Defendants Wolever, OHalloran, Pallesen, Shaver, and Stewart, to the extent Plaintiff asserts claims against them in their official capacities, be **dismissed without prejudice**. *See, e.g.*, *Wilkins v. Palomino*, No. 20-cv-03495-PAB-MEH, 2021 WL 4067420, at *3 (D. Colo. Aug. 12, 2021) (sua sponte recommending dismissal without

prejudice of prisoner's claims for injunctive relief as moot after his transfer to another prison), *report and recommendation adopted*, 2021 WL 4060635 (D. Colo. Sept. 7, 2021).

**B.    Fourth, Fifth, and Eighth Amendments**

"[T]he Fourth Amendment protects against 'unreasonable searches and seizures' and pertains to the events leading up to and including an arrest of a citizen previously at liberty[.]" *Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010) (emphasis omitted). The Eighth Amendment, on the other hand, applies to "those who have been convicted of crime[.]" *Colbruno v. Kessler*, 928 F.3d 1155, 1162 (10th Cir. 2019). "[W]hen neither the Fourth nor Eighth Amendment applies—when the plaintiff finds himself in the criminal justice system somewhere between the two stools of an initial seizure and post-conviction punishment—we turn to the due process clauses of the Fifth or Fourteenth Amendment and their protection against arbitrary governmental action by federal or state authorities." *Porro*, 624 F.3d at 1326; *see also Colbruno*, 928 F.3d at 1162 ("For those in pretrial confinement . . . , claims regarding mistreatment while in custody generally do not come within the protection of the Fourth Amendment or the Eighth Amendment."). In other words, the Fifth or the Fourteenth Amendment applies to pretrial detainees.

"The Fifth Amendment's Due Process Clause forbids the *federal* government from depriving any person of life, liberty, or property, without due process of law." *Al-Turki v. Tomsic*, 926 F.3d 610, 614 (10th Cir. 2019) (emphasis added) (internal quotation marks omitted). On the other hand, "[t]he Due Process Clause of the Fourteenth Amendment . . . prohibits a *State* from depriving any person of life, liberty, or property, without due process of law." *Id.* (emphasis added) (internal quotation and alteration marks omitted).

Here, Plaintiff was held at the Washington County Justice Center as a pretrial detainee at the time of the alleged incidents underlying this lawsuit. *See Am. Compl.* [#19] at 4, 17. Thus, because Plaintiff was a pretrial detainee who was not in federal custody, neither the Fourth Amendment nor the Eighth Amendment nor the Fifth Amendment applies to Plaintiff's claims in this lawsuit. *See, e.g.*, *Garcia-Bengochea v. Utah Dep't of Corr.*, No. 2:21-cv-00536-RJS-CMR, 2024 WL 1745983, at *5 (D. Utah Apr. 23, 2024) ("[T]he Fourteenth Amendment applies when a state official uses excessive force against an 'arraigned pre-trial detainee.'").

Accordingly, the Court **recommends** that Plaintiff's claims asserted under the Fourth, Fifth, and Eighth Amendments (as mentioned in Claims One, Two, and Four) be **dismissed with prejudice**.[8] *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190-91 (10th Cir. 2014) (stating that, when a complaint fails to state claim under Rule 12(b)(6) and granting leave to amend would be futile, dismissal with prejudice is appropriate).

## C.    Claim Five: Conditions of Confinement

Claim Five, construed by the Court as a claim for violation of the Fourteenth Amendment based on conditions of confinement, is asserted against Defendants Washington County Justice Center, OHalloran, Shaver, Wolever, and Goble. *Am. Compl.* [#19] at 3, 13-15, 29-30. The Court construes this claim as a substantive due process claim challenging shared "general conditions of confinement or the treatment of all detainees in a specific facility[.]" *Williamson v. Stirling*, 912 F.3d 154, 174 (4th Cir. 2018).

---

[8] Where appropriate, the Court construes Plaintiff's claims asserted under the Fourth, Eighth, and Fifth Amendments as being asserted under the Fourteenth Amendment instead. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall*, 935 F.2d at 1110) (stating that "a pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers").

Here, Plaintiff generally states that the "living conditions are really bad here because there are a lot of conditions not being met and conditions being violated." *Am. Compl.* [#19] at 29. He then provides a specific list of the allegedly improper conditions that he is "aware of":

> [B]ed spacing is not right, we are being over crowded and because of this we are not afforded the correct space in the cells that we are supposed to have. We are not getting 35 sq feet per person in the Dayrooms. There is not enough seating and writing surfaces in the Dayrooms. There are not enough showers and a lot of the showers are broke anyways and the staff does not always bring the shower curtains.
>
> They don't provide books, board games, and sometimes they don't turn on the T.V.s.
>
> They skip us on razors and hair trimmers and nail cutters all the time. They skip our laundry. They lock us down and don't check on us. They punish people for things that they had nothing to do with. They take things from us for one person's actions. They don't allow the correct air flow. We don't get our 1 hour of rec. a day that we are supposed to get. They were photo copying our legal mail, and keeping the original where they could view them. The toilets are always backing up. The food has been uncooked, stale and soggy, and not the correct nutrition and not the right portion. The grievance procedure is not right. Staff are answering grievances about themselves. There is not enough space to put our hygiene clothes – clean and dirty and our commissary and personal effects. When we are locked down they skip cells and they don't let them out for their hour out. They talk down to us and yell at us. The kitchen does not have a correct kosher and koshering procedure, space, and food. They are putting post convicted people with pre-trial people. They do not have sufficient medical staff and equipment.

*Id.* at 29-30 (cleaned up). Plaintiff asserts that all these and other issues "are playing hell" on his physical and mental health, and that the combination of all these issues give him "a living condition claim." *Id.* at 30.

"Typically, a substantive due process claim pursued by a pretrial detainee challenges the general conditions of confinement or the treatment of all detainees in a specific facility." *Williamson*, 912 F.3d at 174. "The controlling inquiry for such a claim is

whether the conditions imposed on the pretrial detainee constitute 'punishment.'" *Id.* A
plaintiff asserting this type of claim must adequately allege that the "particular restriction
was either: (1) imposed with an expressed intent to punish or (2) not reasonably related
to a legitimate nonpunitive governmental objective." *Id.* (citation and internal quotation
marks omitted).

"In some circumstances, . . . the treatment of a pretrial detainee can be so
disproportionate, gratuitous, or arbitrary that it becomes a categorically prohibited
punishment that will sustain a substantive due process claim." *Williamson*, 912 F.3d at
175. Such "substantive liberty interests under the Fourteenth Amendment" include the
"right[s] to adequate food, shelter, clothing, and medical care." *Youngberg v. Romeo*, 457
U.S. 307, 315 (1982). In other words, a lack of these kinds of necessities is deemed
punishment even if procedural protections are otherwise in place.

The Tenth Circuit has held that this type of a pretrial detainee's conditions-of-
confinement claim requires two elements: (1) the defendant "imposed conditions posing
a substantial risk of serious harm to inmate health or safety, depriving [the] detainee[ ] of
the 'minimal civilized measure of life's necessities'," and (2) the defendant "acted with
deliberate indifference to the detainee['s] health and safety." *United States v. Buntyn*, 104
F.4th 805, 809 (10th Cir. 2024) (quoting *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir.
1998)); *see also Routt v. Howard*, 764 F. App'x 762, 770 (10th Cir. 2019) (holding that a
pretrial detainee asserting violation of "his right to humane conditions of confinement"
must allege "'(1) the official[ ] knew of and disregarded an excessive risk to his health and
safety, and (2) the alleged deprivation was sufficiently serious.'") (quoting *Ledbetter v.
City of Topeka*, 318 F.3d 1183, 1188 (10th Cir. 2003)).

The Tenth Circuit's analysis of this type of claim differs from some other circuits, as discussed in *Williamson v. Stirling*. *See Strain v. Regalado*, 977 F.3d 984, 990 n.4 (10th Cir. 2020) (acknowledging a circuit split regarding whether *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), eliminated the deliberate indifference element from Fourteenth Amendment pretrial detainee claims other than excessive force cases, which are now analyzed under an exclusively objective standard). The Tenth Circuit has retained the deliberate indifference element for conditions-of-confinement claims, like the one Plaintiff asserts.[9] *See Hooks v. Atoki*, 983 F.3d 1193, 1203-04 (10th Cir. 2020) ("We also take this opportunity to clarify that our recent discussion of the deliberate indifference standard in *Strain v. Regalado*, 977 F.3d 984 (10th Cir. 2020), applies outside the medical context.").

The Court notes that, although cases like *Craig v. Eberly* discuss the Eighth Amendment, those standards apply here as well because the Court is determining, under the first element, whether the defendant deprived the plaintiff of the "minimal civilized measure of life's necessities." *Buntyn*, 104 F.4th at 809 n.3 (citing *Craig*, 164 F.3d at 496; *Blackmon v. Sutton*, 734 F.3d 1237, 1244 (10th Cir. 2013)) (stating that, because "detention center officials surely owe pretrial detainees . . . at least the same standard of care prison officials owe convicted inmates," Eighth Amendment case law regarding deliberate indifference claims applies to the Fourteenth Amendment); *see also Covalt v.*

---

[9] The Court emphasizes that this type of claim, which focuses on categorically prohibited conditions, differs from other types of due process conditions-of-confinement claims, which focus on whether the conditions/restrictions were imposed as punishment, and for which there is not a deliberate indifference component. *See, e.g.*, *Colbruno*, 928 F.3d at 1162-63. Here, Plaintiff's overly broad and conclusory statements that "[t]hey punish people for things that they had nothing to do with" and that "[t]hey take things from us for one person's actions" are insufficient to allege that any of the specific conditions at issue were imposed as a form of punishment.

*Inmate Servs. Corp.*, 658 F. App'x 367, 369 (10th Cir. 2016) (stating that a court analyzing a pretrial detainee's claim of unconstitutional conditions of confinement, although governed by the Due Process Clause of the Fourteenth Amendment, utilizes the Eighth Amendment standard as a "benchmark"). In other words, categorically prohibited conditions regarding the "minimal civilized measure of life's necessities" under this type of substantive due process claim are the same under both the Fourteenth Amendment and the Eighth Amendment.

As noted, jail officials must "provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *Craig*, 164 F.3d at 495 (citation and internal quotation marks omitted). For example, in *Littlefield v. Deland*, 641 F.2d 729, 730-31 (10th Cir. 1981), the Tenth Circuit Court of Appeals affirmed a lower court's finding of a due process violation arising from a mentally ill pretrial detainee's 56-day placement in "a solitary cell long used by the county to punish disorderly pretrial detainees and to segregate prisoners with severe mental disorders." The detainee was housed in a cell with no windows, interior lights, bunk, floor covering, or toilet except for a hole in the floor; he was deprived of clothing and bedding; and he had no opportunities to recreate outside his cell or to possess reading or writing materials. *Littlefield*, 641 F.2d at 730-31. The detainee asserted that "this kind and length of confinement without hearing deprived him of due process of law and that it subjected him to cruel and unusual punishment." *Id.* at 731.

Although the district court found no clear evidence of jail officials' intent to punish the plaintiff, it found that "the condition and manner in which [the plaintiff] was maintained

could hardly have been any worse than if he were being punished for adjudicated infractions of a serious nature." *Id.* (quoting district court's ruling). Additionally, the district court reasoned that the "extreme deprivations" which the plaintiff endured for 56 days were "partly retributive, partly precautionary," "unreasonably degrading and inhumane," "masquerade[d] as essential custodial detention" and, therefore, were excessive in relation to the purposes of pretrial detention. *Id.* In its affirmance, the Tenth Circuit held that "to hold a pretrial detainee under conditions of detention this extreme for such an excessive period as fifty-six days" violated the due process clause.[10] *Id.* at 732 (citing *Bell*, 441 U.S. 520).

The first element of a substantive due process conditions-of-confinement claim requires the plaintiff to point to "a single, identifiable human need" of which he was deprived. *Buntyn*, 104 F.4th at 810 (quoting *Craig*, 164 F.3d at 495). The Court may not "combine unrelated conditions" when evaluating this element. *Id.* Rather, the Court "can combine the conditions only if they 'mutually enforce[ed]' each other to deprive a detainee of a single human need, such as sanitation." *Id.* (quoting *Craig*, 164 F.3d at 495). Here, the vast majority of Plaintiff's complaints, at least as currently alleged, do not rise to the level of extreme deprivation of food, clothing, shelter, medical care, or safety. *Craig*, 164 F.3d at 495. For example, Plaintiff mentions inadequate bed-spacing, lack of enough seating and writing surfaces, lack of books and board games, failure to turn on the

---

[10] The Tenth Circuit's decision here did not turn on the fact that the plaintiff was a pretrial detainee, and therefore had not been adjudicated guilty, or that he had been confined under such conditions without notice, a hearing, meaningful review, or legitimate governmental purpose. See *Littlefield*, 641 F.2d at 730, 732. Rather, the Circuit specifically noted that "[a] determination of guilt in this case would not have altered [its] decision," because, whether under the Fourteenth or the Eighth Amendment, holding either a pretrial detainee or a prisoner "under conditions . . . this extreme for such an excessive period as fifty-six days" was unconstitutional. *Id.* at 732, 732 n.2.

television, being "talk[ed] down to," being yelled at, and putting convicted inmates with pretrial detainees, none of which directly impact basic human necessities. *Am. Compl.* [#19] at 29-30.

Other allegations could, if extreme enough, relate to such necessities. For example, without factual adornment, Plaintiff alleges that there is insufficient medical staff and equipment, that toilets back up, that when on lock down they are not allowed out for their one hour of recreation, that laundry is skipped, that the "air flow" is incorrect, and that "food has been uncooked, stale and soggy, and not the correct nutrition and not the right portion." Importantly, though, "[t]he duration of the condition is often critical." *Buntyn*, 104 F.4th at 810 (citing *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) ("While no single factor controls the outcome of these cases, the length of exposure to the conditions is often of prime importance.")). "In general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to" a constitutional violation, but "'substantial deprivations of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration." *DeSpain*, 264 F.3d at 974 (quoting *Johnson v. Lewis*, 217 F.3d 726, 732 (9th Cir. 2000)). Here, Plaintiff has not alleged that such issues are so constant or regular as to deprive him of such needs. For example, if a detainee's laundry was never done or done so infrequently that the detainee only had access to filthy clothes, there may be a constitutional issue regarding a lack of sanitation. However, Plaintiff's allegations do not rise to such a level. *See Ledbetter*, 318 F.3d at 1188 (instructing in pretrial detainee cases that "jail conditions may be restrictive and even harsh without violating constitutional rights") (internal quotation marks omitted); *Routt*, 764 F. App'x at 770.

Accordingly, the Court **recommends** that Plaintiff's Claim Five, to the extent asserted against Defendants Washington County Justice Center, OHalloran, Shaver, and Wolever, be **dismissed without prejudice**. *See Reynoldson v. Schillinger*, 907 F.2d 124, 126 (10th Cir. 1990) (explaining that if "it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief," particularly when the litigant is pro se, a court dismisses without prejudice so that the plaintiff can seek leave to amend).

## D.    Claim Three: Limited Out-of-Cell Time

Plaintiff's Claim Three asserts violations of the First and Fourteenth Amendments based on limited out-of-cell time and is asserted against Defendant Shaver. *Am. Compl.* [#19] at 2, 10, 25-26.

Here, Plaintiff alleges that, on July 8, 2023, Defendant Shaver forced him to choose between using his "limited out-of-cell time for shower, cleaning and phone or access to the law library." *Id.* at 25. Because Plaintiff was in segregation at the time, he was only allowed outside his cell for one hour per day. *Id.* The next day, July 9, 2023, another officer forced Plaintiff to make the same choice. *Id.* Plaintiff also states that he has "been forced with this a number of times, while [he] ha[s] been in segregation at this facility," that he "feel[s] that 1 hour is still not enough time [i]n the law library," and that "[t]his is mentally draining." *Id.* The Court notes that Plaintiff does not appear to contest the segregation itself, only the limited amount of time permitted outside his cell to complete certain tasks.

1.    **Fourteenth Amendment: Opportunities to Shower and to Clean His Cell**

Plaintiff asserts that his Fourteenth Amendment rights were violated for "not being able to shower and clean my cell, violation [of] health and safety." *Am. Compl.* [#19] at 25. The Court construes this claim as a substantive due process claim challenging individualized restrictions. *See Ellis v. Denver County of City*, No. 22-cv-01874-RM-KAS, 2024 WL 3950932, at *11 (D. Colo. Aug. 27, 2024) (explaining the various types of due process claims a pretrial detainee can assert in the conditions of confinement context).

Here, Plaintiff has not alleged that he was deprived of basic necessities such as food, clothing, shelter, medical care, or reasonable safety measures. *See Craig*, 164 F.3d at 495. Regarding showers, Plaintiff's allegations demonstrate that he was able to choose how to use his hour each day, including whether to shower or to partake in other activities. *Am. Compl.* [#19] at 25. He does not allege that he was denied all opportunities to shower, and he does not allege how often he actually showered. The mere assertion of not being permitted a daily shower is not enough to state a sufficiently serious deprivation of a basic necessity. *See, e.g.*, *Tennyson v. Raemisch*, No. 15-cv-00707-MSK-CBS, 2017 WL 4075771, at *7 n.11 (D. Colo. Sept. 14, 2017) ("The general consensus among the various courts seems to be that limiting inmates to a single shower every two to three days will not constitute an Eighth Amendment conditions of confinement violation.") (citations omitted). Similarly, regarding cleaning his cell, Plaintiff provides no allegations regarding its level of cleanliness. Regardless, again, Plaintiff's allegations demonstrate that he was able to choose how to use his hour each day, including whether he should clean his cell or partake in other activities. *Am. Compl.* [#19] at 25. In either event, Plaintiff does not

allege how long he was in segregation, i.e., how long he was limited to these one-hour-per-day time outside his cell.

Even if Plaintiff has adequately alleged deprivation of the "minimal civilized measure of life's necessities," though, he has only provided conclusory allegations, at best, that Defendant Shaver himself acted with deliberate indifference to Plaintiff's health and safety. *Buntyn*, 104 F.4th at 809. In fact, Plaintiff only alleges a single day, July 8, 2023, on which Defendant Shaver forced Plaintiff to decide how he could use his out-of-cell time. To adequately allege a culpable mindset, Plaintiff must allege that Defendant Shaver "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Walker v. Mohiuddin*, 947 F.3d 1244, 1249 (10th Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). In other words, "[t]he subjective component is akin to 'recklessness in the criminal law,' where, to act recklessly, 'a person must 'consciously disregard' a substantial risk of serious harm.'" *Self*, 439 F.3d at 1231 (quoting *Farmer*, 511 U.S. at 837, 839). Given the sparse allegations, Plaintiff has simply not alleged enough to demonstrate deliberate indifference by Defendant Shaver. Thus, in short, based on the information alleged, the Court finds that Plaintiff has not adequately alleged a conditions of confinement claim in violation of substantive due process standards.

Accordingly, the Court **recommends** that Plaintiff's Claim Three, to the extent construed under the Fourteenth Amendment, be **dismissed without prejudice**. *See Reynoldson*, 907 F.2d at 126.

## 2.    First Amendment: Law Library Access

Plaintiff asserts a First Amendment violation based on these events due to inadequate "law library time access." *Am. Compl.* [#19] at 25. The Court construes this claim as asserting a violation of Plaintiff's right to access the courts based on a lack of sufficient access to the facility's law library.[11]

Prisoners have a constitutional right to "meaningful, but not total or unlimited, access to the courts." *Peoples v. CCA Det. Ctrs.*, 422 F.3d 1090, 1107 (10th Cir. 2005). To state a claim for denial of access to courts, a prisoner must demonstrate actual injury. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). The Supreme Court has not established "an abstract, freestanding right to a law library or legal assistance," so "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Id.* at 351. Rather, the inmate must show that alleged shortcomings actually hindered his efforts to pursue a nonfrivolous legal claim. *Id.* For example, he might allege that a complaint "was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known" or that he was "so stymied by inadequacies of the law library that he was unable even to file a complaint." *Id.* Mere conclusory allegations that an inmate has been "unable to pursue pending litigation"

---

[11] The Tenth Circuit variously characterizes court access claims under the First or Fourteenth Amendments. *See, e.g.*, *Vreeland v. Schwartz*, 613 F. App'x 679, 682 (10th Cir. 2015) (discussing state prisoner's "First Amendment right of access to the courts"); *Allen v. Raemisch*, 603 F. App'x 682, 684 (10th Cir. 2015) (same); *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996) (stating that "the Fourteenth Amendment . . . guarantees the right of access to the courts"). Any distinction is purely academic, however, and does not affect the Court's analysis, because "[t]he elements of a court access claim, under any source, appear to be uniform." *A.M. v. N.M. Dep't of Health*, 148 F. Supp. 3d 1232, 1280 (D.N.M. 2015) (citing *Christopher v. Harbury*, 536 U.S. 403, 413-16 (2002)).

because of restricted access to the law library are insufficient to survive dismissal. *Farrell v. Campbell*, 6 F. App'x 830, 832 (10th Cir. 2001) (finding prisoner's "sweeping allegation of actual injury" was too conclusory to state an actual injury) (citing *Twyman v. Crisp*, 584 F.2d 352, 357 (10th Cir. 1978) ("[R]estricted access to the law library is not per se denial of access to the courts.")); *Vreeland v. Schwartz*, 613 F. App'x 679, 683-84 (10th Cir. 2015) (rejecting as speculative prisoner's assertion that prison officials denying him access to recordings had unduly hindered his efforts to pursue postconviction relief).

Here, Plaintiff has not directed the Court's attention to any specific situation in which he was harmed, received an adverse ruling, or was unable to pursue his claims. He states that he "fe[lt] that [he] was in need to meet a deadline because [he was] in fear for [his] safety because of the excessive force that was used" on him. *Am. Compl.* [#19] at 26. However, he does not allege whether he met this deadline, what case the deadline was in, or how the low amount time in the law library detrimentally impacted the specific lawsuit. Thus, this portion of Claim Three should be dismissed because Plaintiff has not sufficiently alleged prejudice or that his right of access to the courts has been impeded such that it constitutes actual injury.

Accordingly, the Court **recommends** that the Motion [#41] be **granted in part**, and that Plaintiff's Claim Three, to the extent asserted under the First Amendment, be **dismissed without prejudice**. *See Reynoldson*, 907 F.2d at 126.

### E.    Claims One and Four: Legal Mail

Both Claims One and Four concern Plaintiff's legal mail. Claim One asserts violation of the First, Sixth, and Fourteenth Amendments, as well as violation of certain federal regulations (specifically, 28 C.F.R. §§ 540.18 and 540.19), based on interference

with legal mail,[12] and is asserted against Defendants Wolever, OHalloran, Pallesen, and Washington County Justice Center. *Am. Compl.* [#19] at 2, 5-6, 17-19. Claim Four asserts violation of the First, Sixth, and Fourteenth Amendments based on interference with legal mail and is asserted against Defendants Shaver, Gregg, and the Washington County Justice Center. *Id.* at 2, 11, 27-28.

To reiterate, Plaintiff here alleges that, on March 31, 2023, when he was booked into the Washington County Justice Center, he was required to give the officers all his confidential legal documents. *Id.* at 17. The documents were photocopied, with Plaintiff receiving the copies and the originals placed "in a non-sealed property bag" that was kept "up front." *Id.* Plaintiff told the officers that he did not want his documents copied, but they said that he would not otherwise be able to have them, so he agreed "under duress." *Id.*

On May 29, 2023, Defendant Pallesen refused to let Plaintiff have his "legal confidential mail" without photocopying them and keeping the originals in the "non-sealed property bag up front." *Id.* Plaintiff told Defendant Pallesen that this was "against the law," but that he would comply "under duress." *Id.* He was told that this procedure was "their Policy." *Id.* The same thing happened on June 1 and/or 2, 2023, but with different staff, i.e., Defendant Wolever and Officer Genereux. *Id.* On June 20, 2023, Officer Genereux brought Plaintiff his "legal confidential mail with 3 in. by 4 in. of one of the corners ripped or cut open." *Id.* at 18.

---

[12] At the end of Claim One, Plaintiff also simply states: "Interference of access to courts." *Am. Compl.* [#19] at 19. Plaintiff does not argue as part of this claim that his right to access the courts has been impeded by any Defendant's action concerning his mail, such as not allowing him to send mail to or receive mail from the courts. Further, as discussed in Section III.D.2. above, Plaintiff has not pointed to any actual injury, as required by *Lewis v. Casey*, 518 U.S. at 349. In other words, he provides no allegations, not even conclusory allegations, that he has been unable to properly litigate any case by or against him due to duplicates of his mail being photocopied at the jail. Thus, even if Plaintiff is asserting a separate access-to-the-courts claim, it fails.

On July 13, 2023, Defendant Shaver asked Plaintiff if he wanted staff to copy his legal mail so that Plaintiff could be given the copies. *Id.* at 27. Plaintiff told him that he did not want his legal mail copied and was told by Defendant Shaver that this was the policy. *Id.* Plaintiff said that copying the legal mail was against the law, but Defendant Shaver refused to give Plaintiff the originals of his legal mail. *Id.* Plaintiff was told that the legal mail would be put "up front" with Plaintiff's property, to which he does not have direct access. *Id.* On July 14, 2023, Plaintiff had a similar conversation with Defendant Gregg over the same issue. *Id.*

The Court first addresses the constitutional claims collectively, and then the claim that certain federal regulations were violated.

### 1.    Sixth, First, and Fourteenth Amendments

The Sixth Amendment protects an inmate's right to correspond with counsel. *Denewiler v. Lea Cnty. Corr. Facility*, No. 23-cv-0736-MIS-KBM, 2024 WL 3443934, at *2 (D.N.M. July 17, 2024). This is based on the fact that the Sixth Amendment "protect[s] the attorney-client relationship from intrusion[.]" *Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974)). Importantly, this protection extends only to "intrusion in the criminal setting," i.e., an inmate's correspondence with his counsel in a criminal case. *Wolff*, 418 U.S. at 576. Plaintiff alleges that, in at least one instance, the mail was from his Federal Public Defender. *Am. Compl.* [#19] at 27.

"[A] prisoner's constitutional claim regarding prison officials confiscating and/or reading legal mail is mo[st] properly analyzed under the First and Fourteenth Amendments[.]" *Swietlicki v. Burtlow*, No. 22-cv-02334-LTB-GPG, 2023 WL 11955948, *5 (D. Colo. Mar. 13, 2023), *report and recommendation adopted* 2023 WL 11955951 (D.

Colo. April 11, 2023). A constitutional "claim of interference with mail ordinarily is not plausible absent factual allegations showing at least that the alleged interference violated prison rules or that the applicable rule was invalid, either generally or in the specific context of the claim." *Gee v. Pacheco*, 627 F.3d 1178, 1185 (10th Cir. 2010). The prisoner must demonstrate actual injury from the interference with his mail. *Id.* at 1191; *see also Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996) (finding no constitutional violation where the prisoner plaintiff claimed that "mail to and from the federal district court on three occasions took four, seven, and nine days" because the prisoner "claim[ed] no prejudice as a result of these delays"). Even "isolated incidents of opening constitutionally protected legal mail, 'without any evidence of improper motive or resulting interference with [the plaintiff's] right to counsel or to access to the courts,' do not support a civil rights claim." *Berger v. White*, 12 F. App'x 768, 771 (10th Cir. 2001) (quoting *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990)). Similarly, "district courts have applied that standard where plaintiffs alleged multiple isolated incidents of jail officials opening legal mail." *Wilcox v. Lucero*, No. 1:23-cv-1165 MIS/DLM, 2025 WL 48599, at *9 (D.N.M. Jan. 8, 2025) (collecting cases); *cf. Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995) (partially reversing lower court and allowing a First Amendment claim arising from a prison's "pattern and practice" of opening confidential legal mail outside inmate's presence to withstand a summary judgment motion) (cited in *Hall v. Chester*, No. 08-3235-SAC, 2008 WL 4657279, at *3 (D. Kan. Oct. 20, 2008)).

The Court notes that there are no allegations that Plaintiff's legal mail was delayed or that it was opened outside his presence, beyond a single allegation that he once received mail with a corner of the envelope ripped open. There are also no allegations

that jail staff actually read through his legal mail,[13] just allegations that they copied the documents, gave Plaintiff the copies, and kept the originals in a non-sealed property bag "up front" where Plaintiff did not have direct access to them. Although Plaintiff alleges one or two instances where he was not given his legal mail, he alleges that decision was totally within his power; in other words, he was told that he would be given his legal mail if he allowed the mail to be copied, per the jail's procedure. *Am. Compl.* [#19] at 27. Importantly, there are no allegations of any harm incurred by Plaintiff with respect to any court case, including harm stemming from any issues with his communication with his criminal counsel. In short, Plaintiff fails to adequately articulate any harm suffered due to Defendants' practices.[14]

Accordingly, the Court **recommends** that Plaintiff's Claims One and Four, to the extent asserted under the Sixth, First, and Fourteenth Amendments, be **dismissed without prejudice**. *See Reynoldson*, 907 F.2d at 126.

### 2.    Federal Regulations

Here, Plaintiff asserts that Defendants' actions violated 28 C.F.R. §§ 540.18(a) and 540.19(b). *Am. Compl.* [#19] at 18-19, 27, 38; *see also id.* at 39 (mentioning 28 C.F.R.

---

[13] Plaintiff merely alleges in a conclusory, speculative manner that he "feel[s] they are reading [his] legal mail," and that he "think[s] they are reading [his] legal mail when they copy them, through the printers['] memory or in the property they keep up front." *Am. Compl.* [#19] at 19, 28.

[14] To the extent these claims are asserted against the individual Defendants, the Court notes that they are entitled to qualified immunity. "To establish that the law was clearly established . . . , the plaintiff must point to Supreme Court or [published] Tenth Circuit precedents [o]n point, or to the clear weight of authority from other circuit courts deciding that the law was as the plaintiff maintains." *Thompson v. Ragland*, 23 F.4th 1252, 1255 (10th Cir. 2022); *see also George v. Beaver County*, 32 F.4th 1246, 1258 (10th Cir. 2022) (noting that the right must be clearly established "in light of the specific context of the case, not as a broad general proposition") (internal quotation marks and citation omitted). Here, Plaintiff has not directed the Court's attention to any case, and the Court has found none, clearly establishing the right at issue in a similar context.

543.14). 28 C.F.R. §§ 540.18(a) concerns the opening and copying of incoming special mail (defined by 28 C.F.R. 540.2(c) to include most legal mail) by prison officials. 28 C.F.R. § 540.19(b) concerns what an inmate must convey to his attorney in order to receive special mail. 28 C.F.R. 543.14 concerns the extent to which prison officials can limit or deny access to special mail if the inmate or his attorney violates the correspondence regulations.

Defendants argue that this aspect of Plaintiff's claims fails because "the Code of Federal Regulations only applies to federal institutions," not to county institutions like the Washington County Justice Center. *Motion* [#41] at 8 n.3. The Court agrees. These regulations only govern the processing of a *federal* inmate's legal mail. *See, e.g.*, *Vallejos v. Walsh*, No. 20-cv-02782-KMT, 2021 WL 5759276, at *1 n.2 (D. Colo. Dec. 3, 2021); *see also Staples v. Chester*, No. 08-3233-SAC, 2012 WL 996943, at *7 (D. Kan. Mar. 23, 2012) (applying these regulations to mail claims concerning the Federal Bureau of Prisons); *Bagguley v. Barr*, 893 F. Supp. 967, 972 (D. Kan. 1995) (same).

Accordingly, the Court **recommends** that Plaintiff's Claims One and Four, to the extent asserted under federal regulations, be **dismissed with prejudice**. *See, e.g.*, *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

## F.    Claim Two: Excessive Force, Deliberate Indifference to Medical Needs, and Lack of Medical Privacy

Plaintiff's Claim Two asserts violation of the Fourteenth Amendment based on excessive force, deliberate indifference to medical care, and lack of medical privacy and

is asserted against Defendants Wolever, Shaver, Stewart, and OHalloran. *Am. Compl.*
[#19] at 2, 7-9, 20-24.

To reiterate Plaintiff's allegations, on June 13, 2023, he attempted to speak with
Defendant Wolever and Officer Genereux, disputing whether he needed to move to a new
pod. *Id.* at 20. When the conversation escalated, Plaintiff asked Officer Genereux to
leave, at which point Officer Genereux told Defendant Wolever to handcuff Plaintiff. *Id.*
Defendant Wolever grabbed Plaintiff's wrist, and Plaintiff tried "to turn to him to try to plead
him into talking" with Plaintiff, because Plaintiff believed that he was still being reasonable.
*Id.* Both officers then grabbed Plaintiff "and started to push [him] around." *Id.* Plaintiff
states that he "froze up not knowing what to do." *Id.* The officers then "started to knee"
him, causing him pain, and then started pushing him around again. *Id.* at 20-21.
Eventually they threw him on his face, "which hurt," and then handcuffed him behind his
back. *Id.* at 21.

Defendant Wolever and Officer Genereux picked Plaintiff up "by the handcuffs,"
carrying him "by the handcuffs," which caused Plaintiff "sever[e] pain" in his wrists, arms,
and back because his toes were barely able to touch the ground most of the time. *Id.*
Plaintiff states that the officers "ran [his] head into door jambs," which was painful and
caused him to "see stars." *Id.* Then, they threw him on his face into a cell which "busted
[his] lip," which was again painful. *Id.* Plaintiff states that the officers then started to
remove the handcuffs, so he tried to sit up, but Officer Genereux jumped on his back and
put his arm around Plaintiff's next. *Id.* Defendant Wolever then started to taze Plaintiff "a
number of times." *Id.* Because it hurt so much, Plaintiff grabbed Defendant Wolever's
wrist and held it away from him. *Id.* He told the officers to get out of the cell, and they left.

*Id.* They also refused to let Plaintiff go to medical, so he told them that he had to go to the hospital. *Id.*

### 1.    Excessive Force

"[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989). "In deciding whether the force deliberately used is, constitutionally speaking, 'excessive,' . . . a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015).[15] "Objective reasonableness under *Kingsley* turns on the 'facts and circumstances of each particular case.'" *Rowell v. Bd. of Cnty. Comm'rs of Muskogee Cnty., Okla.*, 978 F.3d 1165, 1171 (10th Cir. 2020) (quoting *Kingsley*, 576 U.S. at 397) (internal citation omitted).

Defendant Wolever's only argument here is that Plaintiff has not sufficiently made "clear exactly who is alleged to have done what to whom." *Motion* [#41] at 11 (quoting *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013)). The Court is unconvinced. Plaintiff alleges that many of the actions by Defendant Wolever and Officer Genereux were collectively undertaken, including that both officers pushed him around, kneed him, threw him on his face, painfully carried him by the handcuffs, ran his head into door jambs, and threw him into a cell which busted his lip. *Am. Compl.* [#19] at 20-21. Assuming the veracity of these allegations, there is no reason to doubt, at this time at least, that these

---

[15] By contrast, an Eighth Amendment excessive force analysis includes an additional subjective prong, i.e., "whether the defendant acted with a sufficiently culpable state of mind." *Ullery v. Bradley*, 949 F.3d 1282, 1290 (10th Cir. 2020) (internal quotation omitted); *see also Brown v. Flowers*, 974 F.3d 1178, 1182 (10th Cir. 2020) (noting that the "previous statement that the Eighth and Fourteenth Amendment analyses are 'identical[,]'" as set forth in *Lopez v. LeMaster*, 172 F.3d 756 (10th Cir. 1999), "is no longer good law after the Supreme Court's decision in *Kingsley*").

actions could not have been done by both officers. In addition, Plaintiff alleges that Defendant Wolever alone tazed Plaintiff multiple times. *Id.* at 21. This is simply not a situation like *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008), where the plaintiff had used "either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts [we]re attributable to whom," thereby making it "impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed."

Accordingly, the Court **recommends** that the Motion [#41] be **denied** to the extent Defendant Wolever seeks dismissal of Plaintiff's Claim Two asserting excessive force barred by the Fourteenth Amendment.[16]

### 2. Deliberate Indifference to Medical Care and Medical Privacy

In analyzing pretrial detainees' deliberate indifference claims under the Fourteenth Amendment, the Tenth Circuit applies the same test as that for convicted prisoners' Eighth Amendment claims. *See Clark v. Colbert*, 895 F.3d 1258, 1267 (10th Cir. 2018). Accordingly, Plaintiffs must plausibly allege deliberate indifference to Plaintiff's medical needs, the standard which has both an objective and a subjective component. *Id.* The objective component "turns on the seriousness of the [medical] need." *Id.* A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quotation omitted). "The subjective component is met if a prison official 'knows of and disregards an excessive risk to inmate health or

---

[16] It is unclear whether Plaintiff's excessive force claim is intended to encompass any actions taken by Defendants Stewart, Shaver, and OHalloran as well. However, to the extent it may be, it should also be dismissed because Plaintiff provides no allegations whatsoever of any force used by these three Defendants. *See Am. Compl.* [#19] at 23.

safety.'" *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

      a.      **Defendant Wolever**

      Regarding his claim against Defendant Wolever, Plaintiff has not provided enough information about his injuries to allow the Court to find that the objective component of a deliberate indifference claim has been adequately alleged. Although he alleges various painful occurrences, such as being carried by the handcuff and hitting his head on a door, he says nothing about any injuries he may have incurred which needed medical attention. Although he says that his lip was "busted" when he was thrown into a cell, Plaintiff does not allege enough for the Court to determine whether this was a small cut constituting a de minimus injury or something far greater requiring medical attention. Further, although instances may exist where medical care is required after being tasered, the mere fact that Plaintiff was tasered and did not receive medical care does not, without allegations regarding any injury from the event, constitute a constitutional deliberate indifference claim. For example, in *Dulaney v. Keys*, No. 18-3109-SAC, 2019 WL 1670795, at *2 (D. Kan. Apr. 17, 2019), the plaintiff alleged that an officer "tased him between his shoulder blades and in his stomach and chest area, and kicked him for approximately five minutes, while at some point, Defendant Keys sat on him," and that the plaintiff "did not receive medical attention after the incident[.]" The court found that, "[g]iven the sparsity of facts in the Complaint, this Court cannot reasonably infer that Plaintiff has a plausible claim" against the defendant. *Dulaney*, 2019 WL 1670795, at *2. In other words, the mere fact that the plaintiff had been tasered and not received medical care afterward, without more, was not enough to demonstrate a constitutional violation. To be clear, the Court does not

find that injuries sustained from tasering could never support a deliberate indifference claim; rather, the Court merely finds that additional allegations are needed to make Plaintiff's claim viable here.[17]

Accordingly, the Court **recommends** that the Motion [#41] be **granted** to the extent that Plaintiff's Claim Two regarding deliberate indifference in violation of the Fourteenth Amendment against Defendant Wolever be **dismissed without prejudice**. *See Reynoldson*, 907 F.2d at 126.

### b.    Defendants Stewart, Shaver, and OHalloran

Regarding Defendants Stewart, Shaver, and OHalloran, Plaintiff provides only sparse allegations. He alleges that Defendants Stewart and Shaver took him to the hospital; that Defendant Shaver "told the medical staff that [Plaintiff] did it to [him]self"; that he "did not feel safe to talk to the medical staff because" Defendants Stewart and Shaver "refused to leave the room," and Defendant OHalloran put Plaintiff in administrative segregation upon his return to the jail. *Am. Compl.* [#19] at 23. None of these allegations demonstrate that any of these three Defendants knew of and disregarded an excessive risk to Plaintiff's health or safety by their actions. *See Sealock*, 218 F.3d at 1209.

Plaintiff also states that his Fourteenth Amendment "right to medical privacy" was violated by Defendants Stewart and Shaver refusing to leave the hospital room while Plaintiff was examined by medical staff. *Am. Compl.* [#19] at 23. At least one federal court of appeals has held that "the Fourteenth Amendment protects an inmate's right to

---

[17] The Court notes that, even if Plaintiff had stated a viable deliberate indifference to medical claim here, Defendant Wolever would be entitled to qualified immunity based on the present allegations, because the Court has found no relevant legal authority demonstrating clearly established law that a person is automatically entitled to medical care after he has been tasered.

privacy[.]" *Doe v. Delie*, 257 F.3d 309, 311 (3d Cir. 2001). However, the Third Circuit Court of Appeals qualified this right by holding that it is "subject to legitimate penological interests." *Id.* Here, Plaintiff has not provided any allegations tending to show that the presence of the officers in his room at the non-jail hospital setting was not reasonably related to security interests. *See Gee*, 627 F.3d at 1188 (stating that an incarcerated plaintiff must sufficiently plead facts to plausibly allege that complained-of actions were not reasonably related to legitimate penological interests or sufficiently plead facts from which a plausible inference of no legitimate penological interest can be drawn).[18] Therefore, Plaintiff's privacy claim against Defendants Stewart and Shaver fails.

Accordingly, the Court **recommends** that the Motion [#41] be **granted** to the extent that Plaintiff's Claim Two under the Fourteenth Amendment against Defendants Stewart, Shaver, and OHalloran be **dismissed without prejudice**. *See Reynoldson*, 907 F.2d at 126.

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that the Motion [#41] be **DENIED in part and GRANTED in part**. The Court **recommends** that the Motion be **denied** with respect to Defendant Wolever's request seeking dismissal of Plaintiff's Claim Two asserting

---

[18] The Court notes that, even if Plaintiff had otherwise stated a viable medical privacy claim here, Defendants Stewart and Shaver would be entitled to qualified immunity, because the Court has found no relevant legal authority demonstrating clearly established law that jail officials may not be present when medical staff are evaluating an inmate.

excessive force in violation of the Fourteenth Amendment. The Court **recommends** that the Motion be **granted** with respect to all other claims, as outlined above.[19]

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: July 17, 2025

BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge

---

[19] If this Recommendation is adopted in full, the following Defendants should be dismissed from this lawsuit: (1) Washington County Justice Center, (2) OHalloran, (3) Pallesen, (4) Shaver, (5) Stewart, and (6) Gregg.