IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01936-CNS-KAS

JOSHUA OMAR GARCIA,

    Plaintiff,

v.

WOLEVER, Sgt., and
GOBLE, Sgt.,

    Defendants.
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____
**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

    This matter is before the court on **Defendant Sgt. Goble's Motion to Dismiss** [#63][1] (the "Motion"). Plaintiff, who proceeds pro se[2], did not file a response. The Court has reviewed the Motion, the entire case file, and the applicable law. For the reasons set forth below, the undersigned **RECOMMENDS** that the Motion [#63] be **GRANTED**.

---

[1] "[#63]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

[2] The Court must liberally construe the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). In doing so, the Court should neither be the pro se litigant's advocate nor "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

## I.  Background

Although Plaintiff is currently incarcerated by the Colorado Department of Corrections, at all times relevant to this litigation he was a pretrial detainee at the Washington County Justice Center ("Justice Center"). *Am. Compl.* [#19] at 4, 17.[3] Claim Five is the only claim asserted against Defendant Goble. *Am. Compl.* [#19] at 3, 15. The Court construes Claim Five as a substantive due process claim under the Fourteenth Amendment, challenging shared "general conditions of confinement or the treatment of all detainees in a specific facility[.]" *Garcia v. Wash. Cnty. Justice Ctr.*, No. 23-cv-01936-CNS-KAS, 2025 WL 1993690, at *5 (D. Colo. July 17, 2025) (quoting *Williamson v. Stirling*, 912 F.3d 154, 174 (4th Cir. 2018)).

Plaintiff states generally that the "living conditions are really bad here because there are a lot of conditions not being met and conditions being violated." *Am. Compl.* [#19] at 29. He then provides a specific list of the allegedly improper conditions that he is "aware of":

> [B]ed spacing is not right, we are being overcrowded and because of this we are not afforded the correct space in the cells that we are supposed to have. We are not getting 35 sq feet per person in the Dayrooms. There is not enough seating and writing surfaces in the Dayrooms. There are not enough showers and a lot of the showers are broke anyways and the staff does not always bring the shower curtains.
>
> They don't provide books, board games, and sometimes they don't turn on the T.V.s.
>
> They skip us on razors and hair trimmers and nail cutters all the time. They skip our laundry. They lock us down and don't check on us. They punish

---

[3] For purposes of resolving the Motion [#63], the Court accepts as true all well-pleaded, as opposed to conclusory, allegations made in Plaintiff's Amended Complaint [#19]. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

> people for things that they had nothing to do with. They take things from us for one person's actions. They don't allow the correct air flow. We don't get our 1 hour of rec. a day that we are supposed to get. They were photo copying our legal mail, and keeping the original where they could view them. The toilets are always backing up. The food has been uncooked, stale and soggy, and not the correct nutrition and not the right portion. The grievance procedure is not right. Staff are answering grievances about themselves. There is not enough space to put our hygiene clothes – clean and dirty and our commissary and personal effects. When we are locked down they skip cells and they don't let them out for their hour out. They talk down to us and yell at us. The kitchen does not have a correct kosher and koshering procedure, space, and food. They are putting post convicted people with pre-trial people. They do not have sufficient medical staff and equipment.

*Id.* at 29-30 (cleaned up).

Plaintiff asserts that all these and other issues "are playing hell" on his physical and mental health, and that the combination of all these issues gives him "a living condition claim." *Id.* at 30. Plaintiff states that he wants "all this to stop," and seeks compensatory damages. *Id.* at 37. By her Motion, Defendant Goble seeks to dismiss Claim Five pursuant to Federal Rule of Civil Procedure 12(b)(6). *See generally* Motion [#63].

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a claim where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "A complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (quoting *Twombly*, 550 U.S. at 570). "When the complaint includes 'well-pleaded factual allegations, a court should assume their veracity and then determine

whether they plausibly give rise to an entitlement to relief.'" *Carraway v. State Farm & Cas. Co.*, No. 22-1370, 2023 WL 5374393, at *4 (10th Cir. Aug. 22, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). "[D]ismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104-05 (10th Cir. 2017). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial[.]" *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

### III.  Analysis

**A.  Official Capacity Claim**

Defendant notes Plaintiff seeks declaratory and injunctive relief but fails to identify the specifics of the relief sought. *Motion* [#63] at 4 n.3 (citing *Am. Compl.* [#19] at 5, 33, 36). She argues Plaintiff's requests for such relief are moot because he is no longer incarcerated at the Justice Center. *Id.*

When a pre-trial detainee sues officials at his institution seeking declaratory and injunctive relief based on their conduct, and then is transferred to another facility, the transfer may moot his claims. *Jordan v. Sosa*, 654 F.3d 1012, 1027 (10th Cir. 2011) (citing *Green v. Branson*, 108 F.3d 1296, 1299 (10th Cir. 1997)). Specifically, "[w]here the prisoner's claims for declaratory or injunctive relief relate solely to the conditions of

confinement at the penal institution at which the prisoner is no longer incarcerated," courts cannot provide effective relief. *Id.*; *see also Green*, 108 F.3d at 1299-1300 (finding moot prisoner's claims for declaratory and injunctive relief against state officials because he was transferred to federal custody and later released). In other words, granting declaratory or injunctive relief against transferor prison officials would not alter their behavior towards plaintiff if he were no longer in their custody, rendering such claims nonjusticiable. *Green*, 108 F.3d at 1300. However, when a confined plaintiff challenges "policies that apply in a generally uniform fashion throughout a prison system," a court generally will not find his claims moot following transfer to another prison within that system. *Jordan*, 654 F.3d at 1028.

Here, Plaintiff has been transferred from the Justice Center, a county jail, to the Arkansas Valley Correctional Facility, a state prison run by the Colorado Department of Corrections. *Am. Compl.* [#19] at 4; *Notices of Change of Address* [#24, #30, #34]. Because Plaintiff's requests for declaratory or injunctive relief all go to conditions at the county jail (which is not part of the same prison system as his current state prison), his claims, to the limited extent he seeks such relief, are now moot. *See Green*, 108 F.3d at 1300; *Am. Compl.* [#19] at 37. In addition, this means Plaintiff's claims against Defendant are moot to the extent asserted against her in her official capacity. *See Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("[42 U.S.C. §] 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief.").

Accordingly, the Court **recommends** the Motion [#63] be granted as to Plaintiff's claim to the extent he seeks injunctive and declaratory relief, and Plaintiff's claims against

Defendant Goble in her official capacity be **dismissed without prejudice**. *See, e.g., Wilkins v. Palomino*, No. 20-cv-03495-PAB-MEH, 2021 WL 4067420, at *3 (D. Colo. Aug. 12, 2021) (recommending dismissal without prejudice of prisoner's claims for injunctive relief as moot after his transfer to another prison), *recommendation adopted*, 2021 WL 4060635 (D. Colo. Sept. 7, 2021).

**B.      Individual Capacity Claim**

"The controlling inquiry" for a substantive due process claim asserted by a pretrial detainee challenging conditions of confinement is whether the conditions constitute "punishment." *Williamson*, 912 F.3d at 174. A plaintiff asserting this type of claim must adequately allege that the "particular restriction was either: (1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective." *Id.* (citation and internal quotation marks omitted). "In some circumstances, . . . the treatment of a pretrial detainee can be so disproportionate, gratuitous, or arbitrary that it becomes a categorically prohibited punishment that will sustain a substantive due process claim." *Williamson*, 912 F.3d at 175. Such "substantive liberty interests under the Fourteenth Amendment" include the "right[s] to adequate food, shelter, clothing, and medical care." *Youngberg v. Romeo*, 457 U.S. 307, 315 (1982). In other words, a lack of these kinds of necessities is deemed punishment even if procedural protections are otherwise in place.

The Tenth Circuit has held that this type of a pretrial detainee's conditions-of-confinement claim requires two elements: (1) the defendant "imposed conditions posing a substantial risk of serious harm to inmate health or safety, depriving [the] detainee[] of the 'minimal civilized measure of life's necessities'," and (2) the defendant "acted with

deliberate indifference to the detainee['s] health and safety." *United States v. Buntyn*, 104 F.4th 805, 809 (10th Cir. 2024) (quoting *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)); see also *Routt v. Howard*, 764 F. App'x 762, 770 (10th Cir. 2019) (holding that a pretrial detainee asserting violation of "his right to humane conditions of confinement" must allege "'(1) the official[] knew of and disregarded an excessive risk to his health and safety, and (2) the alleged deprivation was sufficiently serious.'" (quoting *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1188 (10th Cir. 2003))).

The Tenth Circuit's analysis of this type of claim differs from some other circuits, as discussed in *Williamson v. Stirling*. See *Strain v. Regalado*, 977 F.3d 984, 990 n.4 (10th Cir. 2020) (acknowledging a circuit split regarding whether *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), eliminated the deliberate indifference element from Fourteenth Amendment pretrial detainee claims other than excessive force cases, which are now analyzed under an exclusively objective standard). The Tenth Circuit has retained the deliberate indifference element for conditions-of-confinement claims, like the one Plaintiff asserts.[4] See *Hooks v. Atoki*, 983 F.3d 1193, 1203-04 (10th Cir. 2020) ("We also take this opportunity to clarify that our recent discussion of the deliberate indifference standard in *Strain v. Regalado* . . . applies outside the medical context.").

---

[4] The Court emphasizes that this type of claim, which focuses on categorically prohibited conditions, differs from other types of due process conditions-of-confinement claims, which focus on whether the conditions/restrictions were imposed as punishment, and for which there is not a deliberate indifference component. *See, e.g., Colbruno v. Kessler*, 928 F.3d 1155, 1162-63 (10th Cir. 2019). Here, Plaintiff's overly broad and conclusory statements that "[t]hey punish people for things that they had nothing to do with" and that "[t]hey take things from us for one person's actions" are insufficient to allege that any of the specific conditions at issue were imposed as a form of punishment.

The Court notes that although cases like *Craig v. Eberly* discuss the Eighth Amendment, those standards apply here as well because the Court is determining, under the first element, whether the defendant deprived the plaintiff of the "minimal civilized measure of life's necessities." *Buntyn*, 104 F.4th at 809 n.3 (citing *Craig*, 164 F.3d at 49; *Blackmon v. Sutton*, 734 F.3d 1237, 1244 (10th Cir. 2013) (stating that, because "detention center officials surely owe pretrial detainees . . . at least the same standard of care prison officials owe convicted inmates," Eighth Amendment case law regarding deliberate indifference claims applies to the Fourteenth Amendment)); *see also Covalt v. Inmate Servs. Corp.*, 658 F. App'x 367, 369 (10th Cir. 2016) (stating that a court analyzing a pretrial detainee's claim of unconstitutional conditions of confinement, although governed by the Due Process Clause of the Fourteenth Amendment, utilizes the Eighth Amendment standard as a "benchmark"). In other words, categorically prohibited conditions regarding the "minimal civilized measure of life's necessities" under this type of substantive due process claim are the same under both the Fourteenth Amendment and the Eighth Amendment.

As noted, jail officials must "provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *Craig*, 164 F.3d at 495 (citation and internal quotation marks omitted). For example, in *Littlefield v. Deland*, 641 F.2d 729, 730-31 (10th Cir. 1981), the Tenth Circuit affirmed a lower court's finding of a due process violation arising from a mentally ill pretrial detainee's 56-day placement in "a solitary cell long used by the county to punish disorderly pretrial detainees and to segregate prisoners with severe mental disorders." The detainee was housed in a

cell with no windows, interior lights, bunk, floor covering, or toilet except for a hole in the floor; he was deprived of clothing and bedding; and he had no opportunities to recreate outside his cell or to possess reading or writing materials. 641 F.2d at 730-31. The detainee asserted that "this kind and length of confinement without hearing deprived him of due process of law and that it subjected him to cruel and unusual punishment." *Id.* at 731.

Although the district court found no clear evidence of jail officials' intent to punish the plaintiff, it found that "the condition and manner in which [the plaintiff] was maintained could hardly have been any worse than if he were being punished for adjudicated infractions of a serious nature." *Id.* (quoting district court's ruling). Additionally, the district court reasoned that the "extreme deprivations" which the plaintiff endured for 56 days were "partly retributive, partly precautionary," "unreasonably degrading and inhumane," "masquerade[d] as essential custodial detention" and, therefore, were excessive in relation to the purposes of pretrial detention. *Id.* In its affirmance, the Tenth Circuit held that "to hold a pretrial detainee under conditions of detention this extreme for such an excessive period as fifty-six days" violated the due process clause.[5] *Id.* at 732 (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)).

---

[5] The Tenth Circuit's decision did not rely on plaintiff's status as a pretrial detainee, and that he therefore had not been adjudicated guilty, or that he had been confined under such conditions without notice, a hearing, meaningful review, or legitimate governmental purpose. *See Littlefield*, 641 F.2d at 730-32. Rather, the Circuit specifically noted that "[a] determination of guilt in this case would not have altered [its] decision," because, whether under the Fourteenth or the Eighth Amendment, holding either a pretrial detainee or a prisoner "under conditions . . . this extreme for such an excessive period as fifty-six days" was unconstitutional. *Id.* at 732, 732 n.2.

The first element of a substantive due process conditions-of-confinement claim requires the plaintiff to point to "a single, identifiable human need" of which he was deprived. *Buntyn*, 104 F.4th at 810 (quoting *Craig*, 164 F.3d at 495). The Court may not "combine unrelated conditions" when evaluating this element. *Id.* Rather, the Court "can combine the conditions only if they 'mutually enforc[ed]' each other to deprive a detainee of a single human need, such as sanitation." *Id.* (quoting *Craig*, 164 F.3d at 495). Here, most of Plaintiff's complaints do not rise to the level of extreme deprivation of food, clothing, shelter, medical care, or safety. *Craig*, 164 F.3d at 495. For example, Plaintiff mentions inadequate bed-spacing, lack of enough seating and writing surfaces, lack of books and board games, failure to turn on the television, being "talk[ed] down to," being yelled at, and putting convicted inmates with pretrial detainees, none of which directly impact basic human necessities. *Am. Compl.* [#19] at 29-30.

Other allegations could, if extreme enough, relate to such necessities. For example, without factual adornment, Plaintiff alleges there is insufficient medical staff and equipment, toilets back up, when on lock down they are not allowed out for their one hour of recreation, laundry is skipped, the "air flow" is incorrect, and "food has been uncooked, stale and soggy, and not the correct nutrition and not the right portion." Importantly, though, "[t]he duration of the condition is often critical." *Buntyn*, 104 F.4th at 810 (citing *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) ("While no single factor controls the outcome of these cases, the length of exposure to the conditions is often of prime importance.")). "In general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to" a constitutional violation, but "'substantial deprivations of shelter, food, drinking water, and

sanitation' may meet the standard despite a shorter duration." *DeSpain*, 264 F.3d at 974 (quoting *Johnson v. Lewis*, 217 F.3d 726, 732 (9th Cir. 2000)).

Here, Plaintiff has not alleged that such issues were so constant or regular as to deprive him of such needs. For example, if a detainee's laundry was never done or done so infrequently that the detainee only had access to filthy clothes, there may be a constitutional issue regarding a lack of sanitation. However, Plaintiff's allegations do not rise to such a level. *See Ledbetter*, 318 F.3d at 1188 (instructing in pretrial detainee cases that "jail conditions may be restrictive and even harsh without violating constitutional rights") (internal quotation marks omitted).

Accordingly, the Court **recommends** the Motion [#63] be granted as to Plaintiff's Claim Five against Defendant Goble in her individual capacity and this claim be **dismissed without prejudice**. *See Reynoldson v. Schillinger*, 907 F.2d 124, 126 (10th Cir. 1990) (explaining that if "it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief," particularly when the litigant is pro se, a court dismisses without prejudice so that the plaintiff can seek leave to amend).[6]

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that the Motion [#63] be **GRANTED**.

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Federal Rule of Civil Procedure 72(b)(2)

---

[6] Considering these recommendations, the Court need not address the remainder of Defendant Goble's bases for dismissal.

provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: January 7, 2026

BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge